**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CV-16-8307-PCT-SPL (MHB) |
| Plaintiff/Respondent, | CR-15-8221-PCT-SPL |
| vs. | **REPORT AND RECOMMENDATION** |
| Moises Alfredo Escobedo-Sanchez, | |
| Defendant/Movant. | |

TO THE HONORABLE STEVEN P. LOGAN, UNITED STATES DISTRICT JUDGE:

Defendant/Movant Moises Alfredo Escobedo-Sanchez ("Movant"), who is confined in the Federal Correctional Institution in Phoenix, Arizona, filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV 16-8307 ("CV") Doc. 1; CR 15-8221 ("CR") Doc. 26.) Plaintiff/Respondent United States of America (the "Government") filed a Response. (CV Doc. 7.) Movant did not filed a Reply.

**BACKGROUND**

Movant was serving an Arizona state prison sentence when he was released to ICE custody on September 16, 2015, and charged in this Court with one count of Reentry of Removed Alien, in violation of 8 U.S.C. 1326(a), enhanced by (b)(1). (CR Doc. 1.) Movant had been sentenced in the Navajo County Superior Court for a drug trafficking offense, and was serving a two-and-a-half-year sentence when he was released to ICE custody. (CV Doc. 11, Exh. 8, sealed Presentence Investigation Report, at 7.) At the time, he had served 15

months of that sentence. (Id.) Movant also had two prior felony theft convictions he sustained in the state of Utah, and another felony prior conviction in 2011 for illegal reentry, for which he was sentenced to 15 months' imprisonment. (Id. at 6-7.) Movant had been previously removed from the United States to Nogales, Arizona on February 6, 2012. (CR Doc. 1.)

Movant appeared for his initial appearance on September 17, 2015, and deputy Federal Public Defender Jon M. Sands ("Mr. Sands") was appointed to represent him. (CR Doc. 2.)

In September 2015, the Government offered Movant a "fast-track" plea offer. The record reflects that Mr. Sands discussed the plea offer with Movant and sent Movant a letter – in both Spanish and English – including a copy of the plea agreement. (CV Doc. 7, sealed September 30, 2015 attorney letter.) The letter explained the statutory maximum penalties, as well as counsel's estimate that the likely sentencing range would be 18 to 24 months' imprisonment. (Id.) The letter stated, in pertinent part,

> You have been through the fast track previously, when you[] received a 15 months sentence in Utah. The fast track here is along the same lines, except that under the terms, and because of your criminal history, the deal results in the possibility of a longer sentence than you received in Utah. The reason is that the court and the prosecutor insist on the possibility of a longer sentence than the 15 months because it is your second conviction for illegal reentry. I have gotten the prosecutor to agree that I can ask for a lesser sentence. My argument would be that you have already served state time, and that punishment should count or be taken into consideration.

(Id..)

Movant accepted the plea offer, and on October 20, 2015, appeared before U.S. Magistrate Judge Bridget Bade for a change-of-plea hearing. (CR Doc. 13.) During these proceedings, Movant confirmed under oath that he was satisfied with Mr. Sands' representation; that he was not threatened or coerced into the plea agreement; and that no promises, other than those written in the agreement, had been made to him - he also acknowledged that counsel's estimate of the likely sentencing range would not be binding on the sentencing judge. (CR Doc. 30 at 8, 10, 16-17, and 19-20.) Specifically, the following discussion took place, in pertinent part:

| | |
|---|---|
| 1 | THE COURT: Did you go over your entire plea agreement with your attorney and then have your attorney answer all of your questions before you signed it? |
| 2 | |
| 3 | THE INTERPRETER: Both, yes. |
| 4 | THE COURT: Do you feel that you had enough time to speak with your attorney about your plea agreement before you signed it? |
| 5 | THE INTERPRETER: Both, yes. |
| 6 | THE COURT: Do you feel that you understand your entire plea agreement? |
| 7 | THE INTERPRETER: Both, yes. |
| 8 | THE COURT: Mr. Escobedo, you have been represented by Mr. Sands. Have you been satisfied with that representation? |
| 9 | DEFENDANT ESCOBEDO: Yes. |
| 10 | ... |
| 11 | THE COURT: Now, for both of you, in the last two days have you had any drugs or alcohol or medication of any kind, including any prescription medications? |
| 12 | |
| 13 | THE INTERPRETER: Both, no. |
| 14 | THE COURT: Have you ever been treated for a mental or an emotional disorder? |
| 15 | |
| 16 | THE INTERPRETER: Both no. |
| 17 | THE COURT: For Mr. Moises Escobedo, does either the government or defense counsel, Mr. Sands, have any reason to believe he's not competent to enter a plea? |
| 18 | |
| 19 | MS. BROWN: No, Your Honor. |
| 20 | THE COURT: Mr. Sands, do you believe your client is competent to enter a plea? |
| 21 | |
| 22 | MR. SANDS: Yes, Judge. |
| 23 | ... |
| 24 | THE COURT: Now, for both of you, did anyone try to threaten you or coerce you in any way to get you to enter into a plea agreement? |
| 25 | THE INTERPRETER: Both, no. |
| 26 | THE COURT: Did anyone make any promises to you as a way to convince you that you should enter your plea agreement other than the promises that are in the written plea agreement? |
| 27 | |
| 28 | THE INTERPRETER: Both, no. |

THE COURT: Now, for both of you, your plea agreement states that you will be pleading guilty to a violation of Title 8 of the United States Code, Section 1326(a), with a possible sentencing enhancement under either Section 1326(b)(1) or (b)(2). This offense is entitled reentry of removed alien. Do you both understand the charge against you?

THE INTERPRETER: Both, yes.

THE COURT: Are you pleading guilty voluntarily because you believe that you are guilty of the offense with which you have been charged?

THE INTERPRETER: Both, yes.

...

THE COURT: ... Mr. Escobedo, do you understand the sentencing agreements in your plea agreement?

DEFENDANT ESCOBEDO: Yes.

THE COURT: Mr. Sands, do you believe your client understands the sentencing agreements in the plea agreement and sentencing guidelines and the other sentencing factors?

MR. SANDS: Yes.

THE COURT: Have you provided him with any estimates of how you believe the guidelines may apply to him?

MR. SANDS: Yes.

...

THE COURT: For both of you, your attorneys have just stated that they provided you with some estimates of how they believe the guidelines will apply to you at sentencing, but your attorney's estimates are not binding on the district judge who will decide your sentence. Do you both understand this?

THE INTERPRETER: Both, yes.

(Id..)

Before sentencing, Mr. Sands filed a Sentencing Memorandum requesting a downward variance from the sentencing range. (CV Doc. 7, Exh. 4.) He argued that the Court should vary from the guidelines to account for Movant's time spent in state custody for the drug trafficking offense; an over representation of criminal history; and his personal circumstances, background, and hardships. (Id..)

\\\

On December 29, 2015, Movant appeared for his sentencing. (CR Doc. 23.) At the sentencing hearing, counsel again requested a downward variance stating, in pertinent part:

> [H]e has spent far longer in custody this time than he's ever spent previously. We are looking at someone who got – who has spent 15 to 18 months in State, and is now going to serve, in my position, an additional 15 months. So he will have doubled that time.

(CR Doc. 29 at 7.)

Movant then promised the Court that he would not return to the United States illegally, and stated that he was satisfied with counsel:

> THE COURT: Sir, are you pleased with all the assistance [trial counsel] Mr. Sands has provided to you in this case?
>
> DEFENDANT: Yes.
>
> THE COURT: Sir, you're very, very fortunate to have Mr. Sands in your corner, because if he didn't fight so hard in your case there's a chance that the Government wouldn't have offered you this fast-track disposition. And Mr. Sands is correct, you may have been facing five, ten years of incarceration instead of what you're facing right now.

(Id. at 9-10.) The Court then granted Movant a 2-level downward variance, which reduced Movant's guideline range from 30-37 months, down to 24-30 months. (Id.) Movant was sentenced to 24-months, the minimum guideline sentence. (CR Doc. 23.)

On December 27, 2016, Movant filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Movant alleges that his sentence is unconstitutional because he was provided with ineffective assistance of counsel. (CV Doc. 1.) Specifically, Movant asserts that Mr. Sands promised him that the Court would credit the 15 months he served in state custody toward his federal sentence. Movant also vaguely contends that counsel intimidated him into accepting the plea stating that he was "scared," and has "problems sleeping taking in the ambush and frustration that my attorney induce in my mind by lying and given false hopes alleging himself the best attorney ever." (Id. at 4, 12.)

**DISCUSSION**

In its Response, the Government asserts that Movant's ineffective assistance of counsel claim, as well as Movant's allegations of promises and intimidation, have no merit,

and that Movant's Motion to Vacate, Set Aside, or Correct Sentence should therefore be denied and dismissed with prejudice. The Court agrees.

The two-prong test for establishing ineffective assistance of counsel was set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88.

The Strickland test also applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). A defendant who pleads guilty based on the advice of counsel may attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel fell below the level of competence demanded of attorneys in criminal cases. See id. at 56. To satisfy the second prong of the Strickland test, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

The court need not address both Strickland requirements if the petitioner makes an insufficient showing regarding just one. See id. at 697 (explaining that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed."); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) (stating that "[f]ailure to satisfy either prong of the Strickland test obviates the need to consider the other").

**A.  DEFICIENT PERFORMANCE**

There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 689-90. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Review of counsel's

performance is extremely limited. Id.

Movant's assertions that Mr. Sands promised him that the Court would credit the 15 months he served in state custody toward his federal sentence, and that Mr. Sands was threatening toward him, are belied by the record.

Specifically, Movant confirmed at both his change-of-plea hearing and sentencing hearing that: (1) he was satisfied with counsel's representation; (2) that his guilty plea was voluntary and intelligent and that no one threatened him or coerced him into accepting the plea offer; and, (3) that no one made any promises to convince him to plead guilty other than those promises set forth in the written plea agreement. Furthermore, at the change-of-plea hearing, Movant was advised that any estimates regarding sentencing provided by counsel are merely estimates, and "are not binding on the district judge who will decide your sentence." Movant confirmed that he understood this.

The sentencing court recognized that Movant significantly benefitted from counsel's representation in that counsel argued for a downward variance on Movant's behalf despite his Movant's lengthy criminal history:

> THE COURT: Sir, are you pleased with all the assistance [trial counsel] Mr. Sands has provided to you in this case?
>
> DEFENDANT: Yes.
>
> THE COURT: Sir, you're very, very fortunate to have Mr. Sands in your corner, because if he didn't fight so hard in your case there's a chance that the Government wouldn't have offered you this fast-track disposition. And Mr. Sands is correct, you may have been facing five, ten years of incarceration instead of what you're facing right now.

(CR Doc. 29 at 10.) Movant did not mention during the sentencing proceedings any alleged promise that was made to him by Mr. Sands, or that Mr. Sands had been abusive or threatening to him.

Lastly, even assuming that counsel promised Movant that the Court would credit the 15 months he served in state custody against the 24-month sentence imposed by the Court, the Court finds that any inaccurate prediction in this case regarding what sentence Movant would receive upon accepting a plea agreement does not necessarily constitute ineffective

assistance of counsel. See, e.g., Doganiere v. U.S., 914 F.2d 165, 168 (9th Cir. 1990). In Doganiere, defendant's counsel advised him that he would not receive a sentence of more than 12 years if he pleaded guilty. Id. The defendant was subsequently sentenced to 15 years' imprisonment, followed by a 20-year term probation. Id. The Ninth Circuit held that counsel's inaccurate prediction of what sentence Doganiere would receive upon pleading guilty did not fall below the objective standard of reasonableness and, thus, did not constitute deficient performance. Id.

> Doganiere's attorney's inaccurate prediction of what sentence Doganiere would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel. [] Further, Doganiere suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained the discretion as to what the sentence would be remained entirely with the court.

Id. (internal citation omitted).

As in the instant case, even if Mr. Sands had advised Movant incorrectly, his prediction does not constitute ineffective assistance of counsel, especially in light of the fact that the Court made abundantly clear its discretion in imposing sentence.

**B.     PREJUDICE**

Having found that Movant's ineffective assistance of counsel claim has no merit, the Court need not examine the prejudice factor of Strickland. Nonetheless, Movant does not demonstrate prejudice.

As the Court has stated, in Hill v. Lockhart, the United States Supreme Court explained that a defendant who pled guilty demonstrates prejudice caused by counsel's incompetent performance in advising him to enter the plea by establishing a reasonable probability that, but for counsel's incompetence, he would not have pled guilty and would have insisted, instead, on proceeding to trial. Hill, 474 U.S. 52, 59 (1985).

Here, Movant is not suggesting that he would not have pleaded guilty, that he wants to withdraw his guilty plea, or that would have proceeded to trial. Rather, in his Motion, Movant admits that he is "guilty of reentry," and simply requests that the Court "reconsider the sentence." (CV Doc. 1 at 4, 13.) Movant has failed to demonstrate prejudice.

**CONCLUSION**

Having determined that Movant's ineffective assistance of counsel claim is without merit, the Court will recommend that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be denied.

**IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV Doc. 1; CR Doc. 26) be **DENIED and DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 31st day of October, 2017.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge